UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

)
JEFFREY S. GAUER,                                          )
                                                           )
                          Plaintiff,                       )
                                                           )
            v.                                             )        Civil Action No. 12-0778 (JDB)
                                                           )
GALLAUDET UNIVERSITY,                                      )
                                                           )
                          Defendant.                       )
_____  )

## MEMORANDUM OPINION

This matter is before the Court on defendant's motion to dismiss.  For the reasons

discussed below, the motion will be granted.

## I.  BACKGROUND

Gallaudet University hired plaintiff "on August 15, 2005 as a full-time, regular tenure-

track instructor for the Department of Business."  Am. Compl. ¶ 7 (internal quotation marks

omitted).  Although plaintiff "had . . . completed all of his doctoral coursework and had . . .

passed his doctoral comprehensive exams," he had not yet completed his doctoral dissertation.

*Id.* ¶ 8.  Plaintiff's appointment apparently was for a one-year term, and "[w]ith each year's

reappointment application, [he] reported on his doctoral progress [and] provided Gallaudet a

copy of his dissertation in-progress."  *Id.* ¶ 9.  The letter of hire provided that, if plaintiff were to

complete his Ph.D. by January 2006, he would have been granted credit of three years towards

promotion and thus be eligible to apply for a promotion to an Assistant Professor position in his

first year. *Id.* ¶ 10.  Based on this letter and Faculty Guideline 7.4.3.1, it was plaintiff's

understanding that he could apply for a promotion either upon completion of his Ph.D. or after

his third year of teaching. *Id.*   Plaintiff taught full-time for three years, from Fall 2005 through

Spring 2008; he received not only positive performance reviews but also assurances as to his

prospects for continued employment at Gallaudet. *Id.* ¶ 11; *see id.* ¶¶ 12-13.  Although he

applied for a promotion in 2008, allegedly his "direct supervisor failed to submit his promotion

application to the Promotion and Tenure Committee." *Id.* ¶ 10.

Plaintiff, who "suffers from chronic pain resulting from degenerative disc disorder and

fibromyalgia," *id.* ¶ 14, had been "receiving weekly epidural injunctions and extremely strong

oral medications for his pain management," *id.* ¶ 15.  These treatments did not sufficiently

manage plaintiff's back pain, and on July 29, 2008, plaintiff applied for medical leave. *Id.*

Gallaudet granted the leave request on August 28, 2008. *Id.*  "Plaintiff underwent spinal fusion

surgery on November 12, 2008." *Id.*  Although pre- and post-surgery pain caused him to be

"bedridden more than 23 hours per day from Summer [] 2008 through Spring 2009," *id.* ¶ 17,

plaintiff completed his doctoral degree while on medical leave. *Id.* ¶ 20.  Thus having obtained

his Ph.D. and having taught for three years, on February 17, 2009, plaintiff formally applied for a

promotion from Instructor to Assistant Professor for the school year beginning on August 16,

2009. *Id.*; *see* Pl.'s Opp'n to Mot. to Dismiss Pl.'s Am. Compl. ("Pl.'s Opp'n"), Ex. A (Request

for Promotion dated February 27, 2009).

According to plaintiff, Dr. Rashid, his direct supervisor, prepared "an incomplete and

false report (indicating that [plaintiff] had not earned his Ph.D.) in order to squelch his earned

reappointment and promotion per Gallaudet guidelines." Compl. ¶ 22.  This report, dated

February 27, 2009, allegedly contained "negative and erroneous" information about plaintiff's

"performance in the areas of teaching, scholarship, service, and integrity," and labeled plaintiff

"irresponsible, . . . dishonest, . . . lazy, [and] incompetent." *Id.*; *see id.* ¶ 30.  In plaintiff's view,

this assessment was "a complete reversal" from those received prior to his medical leave.  *Id.* ¶

22.  Contrary to provisions of Gallaudet's Faculty Handbook, plaintiff allegedly was afforded no

opportunity to review or to challenge the report before its submission on February 28, 2009, to

the Dean and to the Promotion and Tenure Committee.  *See id.* ¶ 31.

    Dr. Rashid allegedly called plaintiff on March 19, 2009, at which time he informed

plaintiff that his return for Fall 2009 would not be recommended for reasons related to plaintiff's

medical condition.  *Id.* ¶ 23.  At that point, "[d]ejected by Gallaudet's sudden change of appraisal

and acting in reliance with Dr. Rashid's statements, [plaintiff] made preparations to move from

the area."  *Id.* ¶ 24.

    On March 25, 2009, plaintiff received a copy of the February 27, 2009, report along with

formal notification of Gallaudet's decision not to renew his teaching position for the following

year and its denial of his request for a promotion.  *Id.* ¶¶ 25-26.  Plaintiff was "shocked" by the

contents of the report, *id.* ¶ 25, and he viewed the "stark contrast" between the pre-medical and

post-medical leave evaluations as a ploy "to facilitate [his] elimination."  *Id.* ¶ 30.  Gallaudet

allegedly hired two full-time instructors to teach courses that plaintiff  alone had taught prior to

taking medical leave.  *Id.* ¶ 32.

    As a result of Gallaudet's actions, plaintiff allegedly has "suffered intense and severe

mental anguish, and psychological and medical distress," as well as "suicidal depression

accompanied by several nervous breakdowns, frequent panic attacks, and chronic insomnia."  *Id.*

¶ 28.  In addition, he allegedly has endured delays in his post-surgical recovery.  *Id.* ¶ 29.  Lastly, according to plaintiff, his professional and personal reputation have been damaged which in turn has caused him to suffer economic loss and emotional distress.  *Id.* ¶ 33.

Plaintiff claims that Gallaudet retaliated against him in violation of the Family Medical Leave Act ("FMLA"), *see* 29 U.S.C. § 2601 *et seq*.  He alleges that he "engaged in protected activity when he applied for and took university-approved medical leave" for the 2008-2009 academic year, and that, as a result, Gallaudet denied his request for promotion, gave him a negative performance evaluation, and chose not to reappoint him.  *Id.* ¶ 37.  In addition, plaintiff claims that Gallaudet breached the employment contract (1) by failing to evaluate his performance fairly, provide him a copy of the February 27, 2009, report timely, and continue his employment, (2) by allowing its employees to discriminate and retaliate against him for having taken leave under FMLA, and (3) by violating an implied warranty of good faith and fair dealing.  *Id.* ¶¶ 42-44.  He demands injunctive relief, compensatory and punitive damages, and an award of costs and attorney's fees.

Plaintiff submitted his complaint and application to proceed *in forma pauperis* to the Clerk of Court on April 24, 2012.  The Court granted leave to proceed *in forma pauperis* on May 11, 2012, and the Clerk officially docketed these items on May 15, 2012.  The Court deems the complaint filed as of April 24, 2012.

## II.  DISCUSSION

The parties do not dispute that a three-year statute of limitations applies.  A plaintiff must bring his claim for a willful violation of the FMLA "within 3 years of the date of the last event

constituting the alleged violation for which such action is brought," 29 U.S.C. § 2617(c)(2), and

under District of Columbia law, the limitations period for bringing an action "on a simple

contract, express or implied[, is] 3 years." D.C. Code § 12-301(7).  By the Court's calculation,

plaintiff may maintain a FMLA or breach of contract claim arising on or after April 24, 2009,

three years prior to the filing of plaintiff's initial complaint.

Gallaudet moves to dismiss both the FMLA and breach of contract claims as untimely.

*See generally* Def. Gallaudet Univ.'s Mot. to Dismiss Pl.'s Am. Compl., Ex. A at 8-9.  Assuming

that March 25, 2009, is the date of the initial breach of contract and the violation of the FMLA,

Gallaudet argues that plaintiff failed to file his complaint within the three-year limitations period.

*Id.*, Ex. A at 9.  Plaintiff responds that the operative date for statute of limitations purposes is

instead August 16, 2009, "the effective date of [Gallaudet's] decision not to renew [p]laintiff's

position."  Pl.'s Opp'n , Ex. A at 4.  He describes the notice received on March 25, 2009, as

Gallaudet's *intention* to breach the contract five months hence, at the start of the new academic

year on August 16, 2009, when its performance under the employment contract came due.  *See*

*id.*  On this theory of anticipatory repudiation of the contract, plaintiff argues, the statute of

limitations began to run on August 16, 2009, and his original complaint was timely filed.

Similarly, plaintiff argues that the date of the last event constituting a violation of FMLA was

August 16, 2009, the effective date of the non-renewal of plaintiff's teaching position.  *Id.*, Ex. A

at 5.

The statute of limitations in "an action for breach of a contract . . . runs from the time of

the breach."  *Bembery v. District of Columbia*, 758 A.2d 518, 519 (D.C. 2000).  Accepting the

allegations of plaintiff's amended complaint as true for purposes of this motion to dismiss, *see*

*Twombly v. Bell Atl. Corp.*, 550 U.S. 544, 555 (2007), it is apparent that plaintiff knew as early as the March 19, 2009 telephone call with Dr. Rashid, and certainly no later than his receipt of Gallaudet's formal notification on March 25, 2009, that his contract would not be renewed for the following year and that his request for a promotion had been denied.  *See LoPiccolo v. American Univ.*, 840 F. Supp. 2d 71, 77 (D.D.C. 2012) (finding that three-year statute of limitations on breach of contract claim began to run when student was notified that athletic scholarship would not be renewed for the following academic year, although aid was to be continued through the end of current semester); *Allison v. Howard Univ.*, 209 F. Supp. 2d 55, 60 (D.D.C. 2002) (finding that statute of limitations began to run when law school dean notified plaintiff by certified mail of his expulsion); *see also Leftwich v. Gallaudet Univ.*, __ F. Supp. 2d __, __, 2012 WL 2930725, at *10 (D.D.C. July 18, 2012).   Here, plaintiff's claims accrued no later than March 25, 2009, such that the filing of his complaint on April 24, 2012, is untimely because it was more than three years later.

### III.  CONCLUSION

The Court concludes that plaintiff's claims are barred by the statute of limitations. Accordingly, defendant's motion to dismiss will be granted.  An Order accompanies this Memorandum Opinion.


DATE:  January 16, 2013                    /s/
                                           JOHN D. BATES
                                           United States District Judge